THE COLUMBIA DELAWARE BRIDGE COMPANY, PLAIN-
TIFFS IN ERROR, v. CHRISTIANA GEISSE ET AL., DE-
FENDANTS IN ERROR.

1. A *certiorari* bringing up an appointment of commissioners to assess
damages made by force of a company's charter, has merely the effect
of a writ of error, and presents the question whether the officer, upon
the facts before him, should have made such appointment.

2. Where a petition seeking the appraisement of damages done to a ferry
by the building of a bridge, showed that the petitioners were the
widow and children of the deceased owner of such ferry, and that they
had been and were in the actual enjoyment of such ferry; *held*—that
these facts showed a right in such parties to join in such proceedings.

3. The statute directed that the bridge company should pay damages to
the owners of such ferries as "may be injured" by the erection of the
bridge; *held*—that the criterion of the ferry-owner's right to recover
damages from the bridge company was, whether the act causing dam-
ages was such an act that, independently of the statutory powers of
the bridge company, it would have been actionable at common law.

4. The clause giving damages in the charter of the bridge company,
construed.

Error to Supreme Court.

For former proceedings in this case, see 5 *Vroom* 268.

The *certiorari* in this case brought before the Supreme
Court an appointment, made by a justice of the peace of the
county of Warren, of three freeholders to appraise the dam-
ages sustained by the defendants, by reason of an alleged in-
jury done to their ferry across the Delaware river, by the
erection of the bridge of the plaintiffs over the same river.

The plaintiffs were chartered on March 3d, 1839, (*Laws of
1839, p.* 151,) and were authorized to erect a bridge over the
Delaware at Columbia, in the county of Warren. By the
ninth section of this act, it is provided that all damages done
by the corporation, by entry upon lands for the purpose of
obtaining materials necessary for building the bridge, should

be ascertained by the parties, if they could agree; or, if they could not agree, then, by an appraisement thereof, to be made on oath by three disinterested freeholders of the neighborhood, or any two of them, to be mutually chosen; but that if either party, on due notice, should neglect or refuse to join in the choice, then the said freeholders were to be appointed by a justice of the peace of the county. The fourteenth section of this act is as follows: " That the said president and directors shall have power to agree with any owner or owners of ferries or shad fisheries that may be injured by the erection of said bridge, and to compensate them for any damages that they may thereby sustain; and if they cannot agree with such owner or owners, then, and in such case, the damages shall be ascertained and paid for in such manner as is provided for in the ninth section of this act; *provided* that, after the said bridge shall have been completed, no compensation shall be received by any person for ferrying at any ferry which shall have been purchased and paid for by the said company, under a penalty of ten dollars for each offence, to be recovered, with costs, by said company, before any competent tribunal having cognizance of the same."

On the 28th of August, 1869, the defendants made complaint in writing, duly verified, to a justice of the peace of the county of Warren, that the plaintiffs had erected a bridge over the said river, at Columbia, and had commenced taking tolls for crossing passengers and vehicles, whereby the said ferry was superseded, and its value destroyed. The prayer of the complaint was for the appointment of commissioners to assess the damages, in accordance with the provisions of the plaintiffs' charter. The justice made the appointment as prayed for, and it was to set aside this action of the justice that this *certiorari* was brought.

For plaintiffs, *J. G. Shipman* and *E. T. Green.*

For defendants, *J. Vanatta.*

Columbia Delaware·Bridge Co. v. Geisse et al.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The only inquiry which this case, in its present aspect, presents, is, whether the justice of the peace who made the appointment of freeholders to admeasure the alleged damages of the defendants, fell into error by doing such act. The argument before this court took a wider range than this, for it was, in part, founded on affidavits subsequently taken, the purpose of which appears to have been to vary or disprove, in certain particulars, the case as it stood before the justice. But such evidence is obviously inadmissible for any present purpose. The controversy, in its progress, has not, as yet, reached the point of trial. If the jurisdictional and proper facts were made to appear in legal form, to the justice, showing a *prima facie* case in the applicants, the appointment became a matter of course, without any regard to the consideration on which side the real and legal merits of the affair might ultimately turn out to be. This *certiorari* has the effect of a writ of error, and nothing more, and the plaintiffs cannot prevail, unless they have manifested error in law on the part of the officer who has made the appointment in question.

I shall, therefore, in considering the questions involved, discard the subsequent evidence which has been taken, and confine my remarks to the premises as they were presented to the justice.

The first reason assigned for setting aside this appointment, which, in the view just expressed, it became proper to consider, is, that these defendants, in their petition to the justice, do not show any joint interest in the ferry in question, and, therefore, have no right to claim a joint assessment of damages.

The statement upon this subject in the petition is, that one Henry Geisse, deceased, in his lifetime, became the owner, and was seized and possessed of this ferry, " from the year 1821 until his death, which occurred on the 5th of May, 1860," and that, upon his death, the defendants, " as his widow and only heirs-at-law," became " seized and possessed

of said ferry, with all its immunities, profits, and privileges, and have continued in the undisturbed possession and use of the same," &c.

No reason was assigned on the argument why, if we assume these facts to be true, a joint right in the widow and heirs is not shown. It would seem clear that all these parties have an interest in the damages sought to be ascertained. On the death of Henry Geisse, the original owner, this ferry devolved on his heirs-at-law, the widow having her right of dower in it  The ferry was a hereditament real, and, as such, was the subject of dower. It is the general rule that such inheritances are burdened with the right of the widow. Thus she is dowable of a fair, a market, and of a mill. *Co. Litt.* 32, *a ; Gilbert on Uses* 371. And in Kentucky it was decided, in a case where the husband died seized of a ferry, that the widow was entitled to one-third of the profits, or of the use of it for a third of the time, in alternate periods. *Stevens* v. *Stevens,* 3 *Dana* 373. In the petition before us, it is averred that the widow and the heirs are seized and possessed of this hereditament, and this statement must be understood as an admission by the heirs of the right of the widow and a practical assignment of her dower. Under such circumstances, the widow was not only a proper, but was a necessary party to these proceedings. There is no error in this particular.

The only remaining question, which, in the view which I have indicated, it is necessary to consider is, that which relates to the construction of the legislative acts which are embraced in this controversy.

By an act approved March 6th, 1856, (*Pamph. Laws, p.* 140,) Henry Geisse, his heirs and assigns, were authorized to establish and maintain the ferry in question, they, on their part, being required to provide proper boats, and to keep the landings in repair. In this statute there was a prohibition against any person using the river for the purpose of a ferry within the distance of a half mile above and a half mile below the ferry which it authorized. At the time the plaintiffs built their bridge, the ferry of the defendants was in existence, and

was being used under and by virtue of this act. By the fourteenth section of the act of 1839, (*Pamph. Laws, p.* 156,) the plaintiffs are required to make compensation to the own-ers of ferries that might be injured by the erection of their bridge.

By way of avoiding liability to make this compensation in the present case, the plaintiffs say that such liability does not extend to ferries created after the date of their charter. But I think this is a misconstruction. The language of the four-teenth section of their charter appears to me to be plain, in this respect. The statutory description of the ferries for in-jury to which compensation is to be made is, such ferries as may be injured by the erection of the bridge. There is noth-ing in the act by force of which this general description can be so curtailed as to be made to embrace only that class of injured ferries which were in existence at the time of the en-actment of the charter. As there was no time limited within which the plaintiffs were required to organize their company, or to build their bridge, such an interpretation would be highly improbable, as such a provision would, under such circumstances, be most unreasonable. The ferry of the de-fendants is, in my opinion, one of those referred to in this clause giving a recompense for damages. The only question being as to the true force and meaning of such section in its other aspects.

Is the ferry of the defendants *injured* within the sense of this provision ?

It is said that an injury, in a legal sense, is the deprivation or invasion of a right, and that, in the present instance, nothing of this kind has occurred, inasmuch as the plaintiffs have acted under legislative authority clearly constitutional. There is no doubt that the legislature was competent to confer on the plaintiffs the right to build this bridge without giving compensation to the defendants. The defendants took their franchise subject to the antecedent rights of the plain-tiffs, and their monopoly, which was beyond legislative inva-sion, excluded competition by rival ferries only. But the

legislature did not see fit to impair the privileges of these defendants, or those of other ferry-owners, without providing a compensation. And the true test of liability to make such compensation is not whether the plaintiffs, armed with the sanction of the legislature, could put up their structure without an illegal invasion of the rights of the defendants, but whether they could have done so in the absence of such sanction. This is the criterion which, after great consideration, has been adopted by the English courts with reference to similar language occurring in statutes creating railroad companies, and in others of a like character. The question has most frequently arisen under the *8th* and *9th Vict., ch.* 20, § 6, entitled "The Railway Clauses Consolidation Act, 1845." This statute, unlike most, if not all, of the railroad charters in this state, provides not only for compensation for damages to land-owners whose property is taken for the enterprise, but also for damages to owners whose lands are injuriously affected by the construction of the road. It is this expression, "injuriously affected," which has the problem so fruitful of discussion and decision. The principle applicable to this language, and which has been sanctioned in a long train of cases, is this, that these compensation clauses do not create any new right, their purpose being simply to preserve the common law right of the party injured, and to provide a proceeding to enforce it. The result is, that if a railroad company, acting under its charter, does an act injurious to another, which at common law would not be actionable, such person so injuriously affected, cannot claim redress by force of the clause under consideration. I do not think it necessary, at the present time, to review these cases, which, as I think, have completely established this doctrine, but I will simply refer to one which is the latest and most authoritative. The case I have in view is *Ricket* v. *The Directors of the Metropolitan Railway Company, L. R.,* 2 *English and Irish Appeals* 175. In the opinion of Lord Chelmsford, the rule I have referred to is stated in these words: "I think that the criterion of a

party's right to damages under the clauses of the railway and companies act, upon which this case depends, is correctly stated by Lord Campbell *In re Penny and South Eastern Railway Company*, 7 *E. & B.* 660, and that in his words, unless the particular injury would have been actionable before the company had acquired their statutory powers, it is not an injury for which compensation can be claimed."

Adopting this rule of construction, as I think we should, and applying it to the present case, it is plain that the defendants belong to the class of persons who are to be recompensed for the damages sustained.    If the plaintiffs had erected this bridge without legislative authority, it would have been a public nuisance; and as it would have worked a special damage to the defendants with respect to their ferry, an action would have lain in their behalf, founded on such wrong, and, consequently, according to the criterion just stated, for an injury thus actionable at common law, compensation must be made by force of the section under consideration.    And it is proper also to remark that, independently of the effect of the rule thus applied, the language of the section itself, taken in connection with the other parts of the act, is such as clearly to show that it was the design of the legislature to afford a fair equivalent for the loss which these defendants have sustained, or will sustain, in consequence of the building of the bridge of the plaintiffs.

With respect to the objection that the injury to be compensated is that which shall arise from the erection, and not that resulting from the use, of the bridge, I remark that such construction appears to me to be too narrow and strained, and not in harmony with the other statutory provisions.    The bridge can do injury to the ferry only in two ways—either by taking some part of the land used in connection with the ferry or by competition with its business.    The former of these injuries is provided for in the ninth section of the plaintiffs' charter, and, consequently, unless the injury provided for in the fourteenth section is that to result from competition,

the entire clause becomes abortive from having no subject to which it can apply.

The result is, that the matter was properly before the justice, and he was legally right in making the appointment in question.

The judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, SCUDDER, VAN SYCKEL, WOODHULL, CLEMENT, KENNEDY, LATHROP, OGDEN, OLDEN, WALES. 12.

*For reversal*—None.

CITED *in Columbia Del. Bridge Co.* v. *Geisse,* 7 *Vr.* 538; *S. C.,* 9 *Vr.* 40; State, M. & E. R. R. Co., pros., v. Hudson Tunnel Co., 9 Vr. 556.